# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

     - v. -                         :

ABDUL WALJI,                      :
   a/k/a "Abdul Valji,"
                          :

      Defendant.          :

- - - - - - - - - - - - - - - x

<u>SUPERSEDING INFORMATION</u>

S1 13 Cr. 217 (DLC)

## COUNT ONE
(Conspiracy to Commit Securities Fraud and Wire Fraud)

The United States Attorney charges:

### Relevant Persons and Entities

1.   Arista LLC ("Arista") began operations as an investment firm in or about February 2010, with its principal place of business in Newport Coast, California.  ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Reniero Francisco ("Francisco"), a co-conspirator not charged in this Superseding Information, formed and operated Arista.  At all relevant times, the only Arista employees were WALJI, Francisco, and a family member of Francisco.

2.   On or about April 20, 2011, Arista became a registered commodity pool operator ("CPO") with the United States Commodity Futures Trading Commission ("CFTC"), and a National Futures Association ("NFA") member.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL   2013

3.   At all times relevant to this Superseding Information, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, was the sole manager, Chief Executive Officer, Secretary, and Treasurer of Arista.  Beginning in or about April 2011, WALJI was a principal of Arista, a registered Associated Person ("AP") with the CFTC, and an NFA Associate.

4.   At all times relevant to this Superseding Information, Francisco was a consultant and advisor to Arista.  In or about September 2010, Francisco became Arista's President.

## Overview of the Scheme to Defraud

5.   From at least in or about February 2010 through in or about December 2011, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco engaged in a scheme to defraud Arista investors.  As part of their fraudulent scheme, WALJI and Francisco collected nearly $10 million from over 30 investors in Arista.

6.   ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco carried out their fraudulent scheme through three methods.  First, WALJI and Francisco misrepresented to several Arista investors the nature of Arista's investments and the returns that investors would receive from investing in Arista. For example, WALJI and Francisco falsely led investors to

2

believe that their money would be invested in safe, risk-free securities, while, in fact, much of the money was invested in options and futures.  Second, WALJI and Francisco caused fraudulent account performance statements to be sent to Arista investors that misrepresented the value of the investors' investments with Arista.  Specifically, in an effort to secure additional contributions from investors, at times when investors were losing money they had invested in Arista, WALJI and Francisco concealed Arista's trading losses and misrepresented that the investors were profiting from their investments. Third, WALJI and Francisco misappropriated at least approximately $2.7 million from Arista's investors through fees to which they were not entitled, and which WALJI and Francisco diverted for their own personal benefit.

### Solicitation of Initial Investments

7.    In or about early 2010, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco began to solicit individuals to invest in Arista.  In connection with those efforts, Francisco recruited several of his former clients from his prior employment with a large broker-dealer ("Company-1").

8.    In or about the spring of 2010, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco caused to be

prepared, and then provided to potential investors, a March 1, 2010 Private Placement Memorandum ("March 2010 PPM") and other offering documents, including a subscription agreement (collectively, the "Arista Offering Documents").  The Arista Offering Documents set forth, among other things, the structure of the fund, its potential investments, the anticipated returns to investors, and the compensation that WALJI and Francisco were entitled to receive for their services in managing the fund. The Arista Offering Documents stated that an investment in Arista securities was "being offered to a limited number of prospective investors who qualify as accredited investors under Regulation D ... promulgated under the Securities Act."  A questionnaire also accompanied the Arista Offering Documents, which prospective investors were required to complete, positing questions about the prospective investor's sophistication and net worth (the "Investor Questionnaire").

9.   The March 2010 PPM offered 1,000 units of membership interest in Arista for sale at a price of $25,000 per unit (for a total offering of $25,000,000).  Under the March 2010 PPM, each proposed subscription required a minimum of ten units, with an aggregate minimum purchase price per subscription of $250,000.  The March 2010 PPM also provided that subscriptions

to purchase less than ten units of Arista could be accepted at the sole discretion of Arista's "Board of Managers." The sole manager on the Board of Managers was ABDUL WALJI, a/k/a "Abdul Valji," the defendant. Indeed, at times WALJI exercised this discretion and permitted several investors to invest less than $250,000.

10. The March 2010 PPM stated that Arista anticipated a 10% annual return on investment for investors.

11. The Arista Offering Documents included a March 1, 2010 consulting agreement between ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Arista (the "Walji Consulting Agreement"). The Walji Consulting Agreement provided that "[i]n consideration for [WALJI's] services," Arista would pay WALJI in cash "the product of 75.0% times [sic] a number equal to: (i) 90.0% of the realized cash gain from investments (net of commissions, fees and expenses paid to third parties); less (ii) operating expenses the Company incurred during the same period of time for which the Consulting Fee is being paid" (the "Walji Consulting Fee"). The Walji Consulting Agreement further provided that the Walji Consulting Fee would be paid every six months. The March 2010 PPM reflected these terms of the Walji Consulting Agreement.

12.   Pursuant to an April 27, 2010 services agreement between ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco (the "Services Agreement"), WALJI agreed to provide Francisco "one-half of the net cash proceeds Abdul [Walji] receives from ARISTA pursuant to the Consulting Agreement."

## Misrepresentations to Arista's Investors

13.   As ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco knew, many of the investors in Arista were unsophisticated investors who had tendered all or part of their retirement savings to WALJI and Francisco.  To this end, and also as WALJI and Francisco knew, many of the investors they solicited did not qualify "as accredited investors under Regulation D," contrary to the requirements and representations in the Arista Offering Documents and under the securities laws. Indeed, several investors who were retired public servants lacked the net worth or financial sophistication required to be considered an "accredited investor."  Nevertheless, in order to qualify for the Arista investment, Francisco coached selected investors on how to answer their Investment Questionnaires, permitting WALJI and Francisco to take their money and at the same time avoid various registration requirements that would otherwise be required.

6

14.   Although the Arista Offering Documents, including the March 2010 PPM, noted that Arista may invest in risky instruments, including options and futures, Francisco made contrary oral representations to several investors, including at meetings with ABDUL WALJI, a/k/a "Abdul Valji," the defendant. Francisco represented to several investors, in sum and substance, that their contributions would be placed in safe investments, similar to those the investors utilized when Francisco was with Company-1.  Indeed, multiple investors told WALJI and Francisco during meetings that they did not want to invest their money in risky investments.   WALJI and Francisco, however, used investor deposits to invest in risky futures and options: S&P 500 future contracts and U.S. Treasury Bond options.

### The Fraudulent Quarterly Account Statements

15.   ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco issued and caused to be issued to investors fraudulent quarterly account statements ("Arista Quarterly Statements") in an effort to increase contributions to Arista, solicit new investments, maintain their existing investments, and enhance their fees.  Among other things, these statements reflected that investors were profiting from their investments, when, in fact,

as WALJI and Francisco well knew, they were suffering dramatic losses. Notably, the Arista Quarterly Statements provided only summary figures, included no information concerning what particular investments were made by the fund, falsely represented the value of the investor's portfolio, and provided no information as to where investor money was being held.

16. For example, the Arista Quarterly Statements dated September 30, 2011, when aggregated, represent Arista's total fund value for the quarter ending September 30, 2011 to be approximately $8.4 million when, in truth, the total fund value was only slightly more than just $500,000. Indeed, the portfolio values provided in the Arista Quarterly Statements dated September 30, 2011 did not reflect that the fund had lost nearly all of its value.

## Misappropriation of Investor Funds

17. As set forth above, the Walji Consulting Agreement provided that the Walji Consulting Fee was to be calculated from the "realized cash gain from investments." Notwithstanding that ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco lost nearly the entirety of investor contributions, WALJI and Francisco paid themselves approximately $4.1 million.

8

18.   While the disclosures provided that the Walji Consulting Fee would be paid to ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco every six months, WALJI and Francisco paid themselves the Walji Consulting Fee on four different days in a single four-month period, i.e., from in or about August 2010 up until in or about November 2010. Specifically, during these four months, WALJI and Francisco caused approximately $2.8 million of a purported "Consulting Fee" to be transferred from Arista's bank accounts to bank accounts controlled by WALJI, Francisco, and an account controlled by Francisco's wife, notwithstanding the significant trading losses during this period.

19.   In addition to paying themselves these amounts, in or about May 2011, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco caused approximately $1.3 million of purported "Consulting Fees" to be transferred to bank accounts controlled by WALJI and Francisco, notwithstanding the significant trading losses that Arista incurred.

20.   From in or about 2010 through in or about late 2011, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco used the misappropriated investor money in connection with

personal expenses, personal investments, travel, and entertainment.

## THE CONSPIRACY

21.  From at least in or about February 2010 through in or about December 2011, in the Southern District of New York and elsewhere, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, namely, (a) to commit fraud in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

### Objects of the Conspiracy

### Securities Fraud

22.  It was a part and an object of the conspiracy that ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and

10

contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons who purchased units of Arista, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Wire Fraud

23.   It was further a part and an object of the conspiracy that ABDUL WALJI, a/k/a "Abdul Valji," the defendant, and Francisco willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme

and artifice, in violation of Title 18, United States Code,
Section 1343.

## Overt Acts

24.  In furtherance of the conspiracy and to effect the
illegal objects thereof, ABDUL WALJI, a/k/a "Abdul Valji," the
defendant, and Francisco caused the following overt acts, among
others, to be committed in the Southern District of New York and
elsewhere:

a.   In or about 2010, WALJI and Francisco met with an
Arista investor and the investor's spouse at a country club in
California.

b.   On or about September 3, 2011, WALJI and
Francisco met with a potential Arista investor at a restaurant
in California.

c.   On or about August 15, 2011, WALJI and Francisco
caused a $60,000 wire transfer to be made from a bank account in
California to a bank account in New York, New York.

d.   On or about September 21, 2011, WALJI and
Francisco caused a $100,000 wire transfer to be made from a bank
account in California to a bank account in New York, New York.

e.   On or about October 7, 2011, WALJI and Francisco caused a $100,000 wire transfer to be made from a bank account in California to a bank account in New York, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Commodities Fraud)

The United States Attorney further charges:

25.  The allegations contained in paragraphs 1 through 20 and 24 of this Superseding Information are repeated and realleged as if fully set forth herein.

26.  From at least in or about February 2010 through in or about December 2011, in the Southern District of New York and elsewhere, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, while acting as a principal and associated person of Arista, a commodity pool operator, willfully and knowingly, by use of the mails and of the means and instrumentalities of interstate commerce, directly and indirectly, would and did (a) employ devices, schemes, and artifices to defraud clients and participants, and prospective clients and participants; and (b) engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and participants, and prospective clients and participants, to wit,

WALJI engaged in a scheme to defraud potential and existing investors of Arista.

(Title 7, United States Code, Sections 6o(1), 13(a)(1), and 13(a)(5).)

## COUNT THREE
### (Securities Fraud)

The United States Attorney further charges:

27. The allegations contained in paragraphs 1 through 3 of this Superseding Information are repeated and realleged as if fully set forth herein.

### Relevant Persons and Entities

28. Calpension, Inc. ("Calpension") began operations as an employee benefit services corporation in or about April 1999, with its principal place of business in California. Calpension operates as a fee-for-services company, servicing and administering deferred pension plans, defined contribution plans, welfare plans and cafeteria plans. At all relevant times, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, was the sole proprietor and 100% shareholder of Calpension.

29. Since at least in or about 2003, the Stone-Lamm Trust was a pension fund administered by ABDUL WALJI, a/k/a "Abdul Valji," the defendant, through Calpension for the purpose of providing pension benefits to selected Calpension clients.

14

30.   Since at least in or about 2006, Allied Benefits, Inc. Retirement Trust ("Allied Benefits, Inc.") was a pension fund administered by ABDUL WALJI, a/k/a "Abdul Valji, the defendant, through Calpension for the purpose of providing pension benefits to selected Calpension clients.

31.   In or about 2008, ABDUL WALJI, a/k/a "Abdul Valji, the defendant, formed a new entity, Allied Benefits Trust, which was another pension fund administered by WALJI through Calpension for the purpose of providing pension benefits to selected Calpension clients.   From in or about 2008 through in or about 2010, WALJI moved client pension fund proceeds from the Stone-Lamm Trust to Allied Benefits, Inc. and then to Allied Benefits Trust (both collectively, the "Allied Benefits Trusts") for pension plan investment.

### Overview of the Scheme to Defraud

32.   From at least in or about early 2008 through in or about June 2013, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, engaged in a scheme whereby he defrauded participants in the Stone-Lamm Trust and Allied Benefits Trusts pension plans (collectively, the "Trusts"), diverted client funds, and perpetrated a "Ponzi" scheme, which caused losses to approximately 35 clients in an aggregate amount of at least

approximately $9.5 million.  WALJI executed his fraudulent scheme through three principal methods.

33.  First, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, made oral misrepresentations to existing and potential clients of the Trusts concerning: (i) the nature of the Trusts' pension plan investments; (ii) the investment value and past performance of the pension plans; and (iii) the source of funds distributed to plan participants who had reached retirement and/or who had requested distributions.  Second, WALJI distributed and caused to be distributed fraudulent statements to clients concerning the value of their accounts and the prior performance of their pension plans in order to forestall redemption requests, induce new clients to contribute to the plans, and induce existing clients to make additional contributions.  Third, in the course of effectuating this fraudulent scheme, WALJI misappropriated approximately $300,000 of client funds during the relevant period.

## Misrepresentations to Pension Plan Clients

34.  Beginning in or about early 2008, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, misrepresented to pension plan participants the nature of the Trusts' investments and the value of those investments.  Specifically, WALJI falsely represented

16

that the money held by the Trusts would be invested in safe,
stable financial instruments, including U.S. Treasury bonds and
Government National Mortgage Association backed securities.
WALJI represented to clients -- both in response to client
questions and on an unsolicited basis -- that none of their
pension plans held with the Trusts would be invested in risky,
volatile and unsafe investments, such as options and futures.
In truth and in fact, however, and contrary to WALJI's
representations, WALJI invested the Trusts' funds in options and
futures because WALJI sought to obtain large investment gains in
the Trusts' accounts for the purpose of increasing WALJI's own
commissions.  WALJI misrepresented the nature of these pension
plan investments to approximately 35 clients who contributed to
the Trusts.  In furtherance of this fraudulent scheme, WALJI
caused client funds to be transmitted from bank accounts in
California to bank accounts held by securities clearinghouse
brokers in New York, New York.

### The Fraudulent Account Statements

35.  Beginning in or about 2008, the value of investments
held by pension plan clients of ABDUL WALJI, a/k/a "Abdul
Valji," the defendant, began to decline significantly in value.
In order to avoid disclosing the Trusts' trading losses, WALJI

created and distributed to several plan participants fraudulent account statements that misrepresented the value of those funds. Additionally, WALJI created fraudulent account statements that omitted any reference to the fact that money held by the Trusts had been invested in options and futures.  WALJI manufactured fraudulent account statements in order to forestall client redemption requests and to induce clients to make additional pension contributions.

36.  For example, from in or about early 2008 through in or about June 2013, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, mailed or caused to be mailed to plan participants quarterly statements that WALJI drafted in the name of the Allied Benefits Trusts.  These statements misrepresented the nature of the financial instruments in which the client's plan was invested and the value of those investments.

37.  Furthermore, as selected clients reached retirement age and/or in response to requests for disbursements by certain pension plan participants, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, sent or caused to be sent money to selected clients, which WALJI falsely represented to be proceeds of their individual pensions.  In truth and in fact, and as WALJI well knew, the purported pension disbursements were often funds

18

contributed by other pension plan clients.  Moreover, WALJI made purported pension distributions to clients using funds WALJI misappropriated from Arista investors as part of the fraudulent scheme described in Counts One and Two.

38.  As a result of the fraudulent scheme perpetrated by ABDUL WALJI, a/k/a "Abdul Valji," the defendant, WALJI's pension plan clients lost more than approximately $9.5 million.

### Misappropriation of Pension Plan Client Funds

39.  From in or about early 2008 through in or about June 2013, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, misappropriated at least approximately $300,000 of client funds from the Trusts.  During the relevant period, WALJI caused money that belonged to WALJI's clients and was therefore held in the Trusts' accounts for their benefit, to be disbursed from those accounts to WALJI for, among other things, WALJI's personal expenses and trading activity.

### STATUTORY ALLEGATION

40.  From at least in or about early 2008 through in or about June 2013, in the Southern District of New York and elsewhere, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the

mails and the facilities of national securities exchanges, in
connection with the purchase and sale of securities, used and
employed manipulative and deceptive devices and contrivances, in
violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by: (a) employing devices, schemes, and artifices to
defraud; (b) making and causing to be made untrue statements of
material facts and omitting to state material facts necessary in
order to make the statements made, in the light of the
circumstances under which they were made, not misleading; and
(c) engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon persons,
to wit, WALJI engaged in a scheme to defraud participants in the
Stone-Lamm Trust and Allied Benefits Trusts.

     (Title 15, United States Code, Sections 78j(b) & 78ff;
    Title 17, Code of Federal Regulations, Section 240.10b-5)

## FIRST AND SECOND FORFEITURE ALLEGATIONS

    41.  As a result of committing the offenses alleged in
Counts One and Two, ABDUL WALJI, a/k/a "Abdul Valji," the
defendant, shall forfeit to the United States, pursuant to Title
18, United States Code, Section 981(a)(1)(C), and Title 28,
United States Code, Section 2461, all property, real and
personal, which constitutes or is derived from proceeds
traceable to the commission of those offenses, including, but

not limited to, a sum of United States currency equal to $4.1 million in United States currency, representing the amount of proceeds obtained as a result of the charged offenses, and all right, title and interest in the following specific property:

(a)   any and all funds or other property held by Interactive Brokers in Account Number U945335 in the name of Arista LLC, and any property traceable to such property;

(b)   any and all funds or other property held by Comerica Bank in Account Number 1894321080 in the name of Arista LLC, and any property traceable to such property;

(c)   any and all funds or other property held by Comerica Bank in Account Number 1894319886 in the name of Arista LLC, and any property traceable to such property; and

(d)   the real property and appurtenances, with all improvements and attachments thereon, located at 33750 Paseo Del Puerto, San Juan Capistrano, California 92675.

## THIRD FORFEITURE ALLEGATION

42.   As a result of committing the offense alleged in Count Three, ABDUL WALJI, a/k/a "Abdul Valji," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, which

21

constitutes or is derived from proceeds traceable to the commission of those offenses, including, but not limited to, a sum of United States currency equal to $9.5 million in United States currency, representing the amount of proceeds obtained as a result of the charged offense, and all right, title and interest in the following specific property:

(a) any and all funds or other property held by California Bank and Trust in Account Number 3150098711 in the name of Amigos Grove LLC, and any property traceable to such property;

(b) any and all funds or other property held by Farmers and Merchants Bank in Account Number 11715553 in the name of Stone-Lamm Trust, and any property traceable to such property;

(c) any and all funds or other property held by Interactive Brokers in Account Number U625249 in the name of Allied Benefits Trust, and any property traceable to such property;

(d) any and all funds or other property held by OptionsXpress in Account Number 0537-3253 in the name of Allied Benefits Inc Retirement Trust, and any property traceable to such property;

    (e)  any and all funds or other property held by TD Ameritrade in Account Number 784-329967 in the name of Abdul S. Valji & Marin Marinoff TRS FBO The Stone-Lamm Trust UA, and any property traceable to such property; and

    (f)  any and all funds or other property held by Wells Fargo in Account Number 7476535971 in the name of Allied Benefits, Inc. Retirement, and any property traceable to such property.

### Substitute Assets Provision

43.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (i)  cannot be located upon the exercise of due diligence;

    (ii)  has been transferred or sold to, or deposited with, a third party;

    (iii)  has been placed beyond the jurisdiction of the court;

    (iv)  has been substantially diminished in value; or

    (v)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States, Section 853(p);
Title 28, United States Code, Section 2461.)


PREET BHARARA
United States Attorney

24

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### ABDUL WALJI,
### a/k/a "Abdul Valji,"

### Defendant.

### SUPERSEDING INFORMATION

S1 13 Cr. 217 (DLC)

(18 U.S.C. §§ 371; 7 U.S.C.
§§ 6o(1), 13(a)(1), and 13(a)(5);
15 U.S.C. §§ 78j(b) & 78ff;
17 C.F.R. § 240.10b-5)

PREET BHARARA
United States Attorney.

7/2/2013

Waiver of Indictmat filed.

Cote, USDJ